UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


Brenda Sue Ashby,                        )
                                         )
                Plaintiff,               )
                                         )        1:10-cv-938-SEB-TAB
        vs.                              )
                                         )
Michael J. Astrue, Commissioner of Social )
Security                                 )

                Defendant.


**ORDER**


        Plaintiff Brenda Sue Ashby filed a Title II application for a period of disability and

disability insurance benefits on June 29, 2006, alleging an onset of disability date of May

1, 2006.  R. at 124-26.  A hearing was held on March 18, 2009, after which

Administrative Law Judge ("ALJ") Deborah A. Arnold issued a decision denying

Plaintiff benefits.  R. at 10-18.  Plaintiff requested review by the Appeals Council, which

request was denied on June 16, 2010, making the ALJ's decision final.  For the reasons

detailed herein, the Commissioner's decision is <u>AFFIRMED</u>.

    **I.      Plaintiff's Medical History**

        Plaintiff was 45 years old as of her alleged disability onset date of May 1, 2006.

R. at 124.  Prior to that date, she worked as a light machine operator for approximately 24

years.  R. at 50-51.  Also prior to that time, Plaintiff was seen by Dr. James Zhang for

headaches from which Plaintiff had suffered for the past 10 years. R. at 437. Plaintiff underwent an MRI due to her headaches in March, 2006 that revealed "[t]wo tiny foci of increased signal intensity on the left carona radiata on T-2 weighted images, most likely representing chronic ischemic white matter changes or changes due to migraine." R. at 439. Plaintiff continued to suffer from migraine headaches and sought further treatment for them in August, 2006, October, 2008, and February, 2009. R. at 245, 394-95, 432-33. A CT scan performed in October 2008 revealed that Plaintiff had "mild bifrontal corticol atrophy." R. at 395, 433. The CT scan also revealed an "unremarkable" "posterior fossa," that Plaintiff's "ventricular system" was "midline," and a lack of mass or intracranial hemorrhage. R. at 395. In response to the atrophy shown on the CT scan, Plaintiff underwent a consultative neuropsychological examination by neuropsychologist, Dr. Venezia, to evaluate cognitive functioning. R. at 428-31. Dr. Venezia concluded that Plaintiff "performed very poorly on an objective, psychometric measure designed to assess effort." This made the results of Dr. Venezia's evaluation, which would have otherwise shown severe impairment, "of questionable validity." R. at 430. The evaluation of Plaintiff's mood suggested moderate depression. Id.

An MRI performed on June 26, 2006 of Plaintiff's lumbar spine revealed "a small to moderate-sized direct posterior disc herniation at L1-2" and "a moderate diffuse annular disc bulge at L4-5." R. at 193, 200. After several falls over the course of 2006, Plaintiff's orthopaedic surgeon, Dr. E.D. Carrell, completed a "Spine Residual Functional Capacity Questionnaire" for Plaintiff in December of that year. R. at 310-314. Therein,

Dr. Carrell described Plaintiff's condition as chronic lumbar degenerative disc disease with radiculitis with sciatica. R. at 310. Dr. Carrell described Plaintiff's condition as "Poor – chronic medical problem with chronic disability – permanent." R. at 311. He also indicated that Plaintiff could not walk farther than one city block without rest or severe pain, that she could sit for only one hour before needing to get up, and that she could stand for only 20 minutes before needing to sit down or walk around, that she had "mostly bad days," and accordingly Plaintiff avoid all lifting, twisting, stooping, bending, crouching, climbing ladders, and climbing stairs. R. at 312, 314. He further indicated that Plaintiff could sit less than two hours total in an eight-hour work day and could stand/walk less than two hours in an eight-hour work day. Id.

In September 2006, a state agency reviewing physician, Dr. A. Dobson, opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday, balance and stoop, occasionally climb ramps and stairs, climb ladders, ropes, scaffolds, kneel, and crouch. R. at 266-67. He opined that Plaintiff could never crawl, and that she should avoid hazards of wet, slippery surfaces and uneven terrain. Id. Another state agency reviewing physician affirmed Dr. Dobson's determinations in November 2006. R. at 278.

Plaintiff also sought medical treatment for knee pain following her disability onset date. An MRI performed on May 9, 2006 revealed an "oblique tear of the posterior horn of the medial meniscus" and "bone marrow edema of the left knee compatible with bone

3

bruise lateral to the tibial plateau and medial femoral condyle." R. at 251. During an arthroscopic surgery on May 18, 2006, Dr. Carrell discovered a torn anterior cruciate ligament. R. at 191-92. He opined that the ligament would not need reconstruction due to Plaintiff's "occupation and physical activity status." R. at 191. Plaintiff fell twice during the remainder of 2006, which caused her to seek further treatment for her knee. On February 12, 2007, Dr. Carrell wrote the following note regarding Plaintiff's condition:

> She is applying for Medicaid and I think she is disabled, unable to return to work, and therefore eligible. I wrote her a statement detailing her medical conditions, which are chronic including lumbar osteoarthritis, osteoarthritis in the knees, and degenerative disc with disc rupture in her lumbar spine. I do not feel she is capable of going back to work. She still walks with a cane. I think her problem is long term and not short term.

R. at 297.

In May 2008, Plaintiff suffered a fall in her bedroom that resulted in pain to her shoulder blades and low back. R. at 317. An MRI performed following the fall revealed an acute subacute compression fracture at the T-5 vertebral body, mild degenerative changes, and a small broad-based left paracentral disc protrusion with mild effacement at the anterior C-7 space. R. at 360. There was also minimal retropulsion of the posterior aspect of the T5 vertebral body. Id. Plaintiff continued to experience pain in her back for which she sought treatment throughout 2008 and early 2009.

Additional factual background information is detailed below, as pertinent.

**II.     Applicable Law**

To be eligible for SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by a claimant's statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

The Social Security Administration has implemented these statutory standards in part by prescribing a "five-step sequential evaluation process" for determining disability. 20 C.F.R. §§ 404.1520 and 416.924. If disability status can be determined at any step in the sequence, an application will not be reviewed further. Id. At the first step, if the claimant is currently engaged in substantial gainful activity, then she is not disabled. At the second step, if the claimant's impairments are not severe, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.924(c). Third, if the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions included in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, then the claimant is deemed disabled. The Listing of Impairments

consists of medical conditions defined by criteria that the Administration has pre-determined are disabling. 20 C.F.R. § 404.1525. If the claimant's impairments do not satisfy a Listing, then her residual functional capacity ("RFC") will be determined for the purposes of the next two steps. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. §§ 404.1545 and 416.945. At the fourth step, if the claimant has the RFC to perform his past relevant work, then she is not disabled. Fifth, considering the claimant's age, work experience, and education (which are not considered at step four), and her RFC, she will not be determined to be disabled if she can perform any other work in the relevant economy. The claimant bears the burden of proof at steps one through four, and at step five the burdens shifts to the Commissioner. Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005). The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision is supported by substantial evidence and otherwise is free of legal error. Kendrick v. Shalala, 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison v. NLRB, 305 U.S. 197, 229 (1938)).

## III.    The ALJ's Decision

As referenced above, a hearing with regard to Plaintiff's Title II application for a

period of disability and disability insurance benefits was held on March 18, 2009.

Plaintiff, her husband, and a vocational expert testified at the hearing. The ALJ denied

Plaintiff's application on July 1, 2009. At step one of the sequential evaluation process,

the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1,

2006, the application date. R. at 12. At step two, the ALJ found that Plaintiff had the

severe impairments of degenerative joint disease of the knees, degenerative disc disease,

and migraines. Id. At step three, the ALJ found that Plaintiff did not have an impairment

or combination of impairments that either meet or medically equal any of the conditions

in the Listing of Impairments.

The ALJ found that Plaintiff had the RFC to perform a reduced range of sedentary

work given her abilities to "occasionally lift and carry 20 pounds and frequently lift and

carry 10 pounds; stand or walk for a total of 2 hours in an 8 hour day; sit for 6 hours in an

8 hour day; occasionally climb, kneel and crouch; and never crawl; with a need to avoid

concentrated exposure to wet, slippery surfaces and uneven terrain. R. at 13. She further

concluded that "the claimant's subjective complaints [were] not as severe or limiting as

alleged and would not preclude her from performing work at the residual functional

capacity noted above on a regular and sustained basis." R. at 16. At step four, the ALJ

found that Plaintiff was unable to perform her past relevant work as a machine operator.

R. at 16. At step five, the ALJ found that, considering Plaintiff's RFC, her age (45 at her

application date), education (limited with the ability to speak English), work experience,

and relying on the Medical-Vocational Guidelines and on the testimony of the vocational

expert, jobs exist in the national economy that Plaintiff could perform.  These occupations included: hand packer and packager, production assembly, and sewing machine operator.  Therefore, the ALJ found that Plaintiff was not disabled and not entitled to benefits.

## IV.    Discussion

Plaintiff has asserted three arguments on the basis of which she asserts remand is necessary: (A) The ALJ erred in discrediting her complaints of migraine headaches; (B) The ALJ erred in failing to give controlling weight to the opinions of the Plaintiff's treating physician; and (C) This case should be remanded for the consideration of new and material evidence.  We address each of these arguments below.

## A.    The ALJ's Credibility Assessment

As referenced above, Plaintiff argues that the ALJ erred in discrediting the severity of her complaints regarding her migraine headaches.  The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  Specifically, with regard to Plaintiff's statements related to her migraines (the only credibility assessment that Plaintiff now challenges), the ALJ explained:

> Despite the claimant's allegations of frequent migraines, the claimant did not report such nor has she sought neurological treatment since her alleged onset date (Exhibit 22F).  On October 9, 2008, a CT scan of the head revealed mild bifrontal corticol atrophy with no mass or intracranial hemorrhaging (Exhibit 20F page 3).  Daniel J. Venezia, Ph.D., a neuropsychologist, performed a consultative examination of the claimant on November 5, 2008 in order to evaluate the claimant's cognitive functioning

> in light of the CT scan results and found that the claimant did not put forth
> sufficient effort to provide test results (Exhibit 21F page 4). Nevertheless,
> Dr. Venezia found intact memory and thought processes and borderline
> intelligence (Exhibit 21F).

R. at 15-16. Plaintiff asserts that, contrary to the ALJ's finding that she had not reported nor sought treatment for neurological treatment since May 1, 2006, the record clearly shows that Plaintiff reported her headaches to Dr. Daniela Djodeva on August 23, 2006, R. at 245, that she complained of headaches to two other providers in October 2008, which resulted in a CT scan that revealed a condition called "mild bifrontal corticol atrophy," R. at 394-95, 433, and that in February, 2009, she returned to Dr. Zhang's office complaining of severe migraine headaches. R. at 432. While the Commissioner concedes that the ALJ's statement regarding Plaintiff's failure to seek treatment for her headaches since her alleged disability onset date "was not entirely valid," the Commissioner contends that the ALJ's error was harmless because the ALJ's credibility decision was otherwise sufficiently supported.

In general, we review an ALJ's credibility determination with special deference, in light of the fact that the ALJ is in the best position to evaluate an applicant's credibility. Simila v. Astrue, 573 F.3d 503, 517 (7th Cir. 2009). "We reverse that determination only if it is so lacking in explanation or support that we find it 'patently wrong.'" Id. (quoting Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008)). However, even if portions of the ALJ's credibility determination are invalid, "an ALJ's credibility assessment will stand 'as long as [there is] some support [for it] on the record . . . .'" Berger v. Astrue, 516 F.3d

539, 546 (7th Cir. 2008) (quoting <u>Schmidt v. Astrue</u>, 496 F.3d 833, 842 (7th Cir. 2007));

<u>Halsell v. Astrue</u>, Case No. 09-2129, 2009 WL 4913322, at *12-13 (7th Cir. Dec. 18,

2009)("Not all of the ALJ's reasons must be valid as long as enough of them are . . . .").

     As the Comissioner points out, the ALJ's credibility determination was not based

solely on her admittedly incorrect finding that Plaintiff had not sought treatment for her

headaches after her alleged disability onset date.  The ALJ also noted that the results of

the October 9, 2008 CT scan and Dr. Venezia's evaluation of Plaintiff's condition and

credibility supported her finding that the Plaintiff's "statements concerning the intensity,

persistence and limiting effects of these symptoms [were] not credible to the extent they

[were] inconsistent with the above residual functional capacity assessment."  Plaintiff has

not asserted, much less developed, any argument that the CT scan or Dr. Venezia's

findings do not support the ALJ's credibility determination.  Moreover, the Seventh

Circuit recently concluded that an adverse credibility determination was adequately

supported where the ALJ had based his decision, in part, on the opinion of the claimant's

physician that the claimant's claimed symptoms were exaggerated.  <u>McKinsey v. Astrue</u>,

641 F.3d 884, at*13-17 (7th Cir. June 3, 2011).  We find that the ALJ's reliance on Dr.

Venezia's evaluation of Plaintiff's credibility in this case is analogous to that which the

Seventh Circuit expressly condoned in <u>McKinsey</u> and, accordingly, conclude that the

ALJ's credibility determination was adequately supported despite the deficiency

discussed above.

    **B.**    **The ALJ's Treatment of Dr. Carrel's Opinion**

Plaintiff also asserts that the ALJ erred in her determination that the December 2006 opinion of Dr. Carrell (Plaintiff's treating orthopaedic surgeon) was "excessive in light of clinical and laboratory findings after recovery from acute injuries and the claimant's conservative treatment." The specific portion of the ALJ's discussion regarding Dr. Carrell's opinions with which Plaintiff takes issue reads as follows:

> In a Spine Residual Functional Capacity questionnaire, dated December 15, 2006, Dr. Carrell opined that the claimant can walk less (sic) one city block, sit at one hour at a time and less than 2 hours in an 8 hour day, stand for 20 minutes at a time and less than 2 hours in an 8 hour day, walk every 5 minutes for 1 minute during the 8 hour day and never lift, twist, stoop, bend, crouch, climb ladders or stairs (Exhibit 17F pages 1-5). However, his opinion is excessive in light of clinical and laboratory findings after recovery from acute injuries and the claimant's conservative treatment. Moreover, on February 12, 2007, Dr. Carrel (sic) opined that the claimant is medically unable to work due to a lumbar disc rupture, polycystic kidneys, hypertension and osteoarthritis in the knees and back (Exhibit 16F page 1). His opinion was beyond his area of expertise as it is a vocational assessment rather than a medical determination and findings of disability are reserved to the Commissioner, as well as being inconsistent with the record as a whole. Greater weight is accorded to State agency doctors A. Dobson, M.D., and F. Lavallo, M.D., who opined that the claimant can lift 20 pounds occasionally and 10 pounds frequently, sit, stand or walk for a total of 6 hours in an 8 hour day, occasionally climb ramps, stairs, ladders, ropes and scaffolds, occasionally kneel and crouch, never crawl and must avoid concentrated exposure to hazards of wet, slippery surfaces and uneven terrain (Exhibits 9F and 11F). Although they were overly optimistic as to the claimant's ability to stand or walk considering her multiple injuries, their opinions regarding lifting and non-exertional abilities are consistent with the record as a whole.

R. at 16.

As Plaintiff's treating orthopaedic surgeon, Dr. Carrell's opinions regarding the nature and severity of Plaintiff's condition are to be given controlling weight as long as

they are well-supported by medically accepted techniques and consistent with other substantial evidence in the record. 20 C.F.R. §404.1527(d)(2). Where an ALJ concludes that a treating physician's opinion is not entitled to controlling weight, he or she still may not summarily reject the opinion. Valentine v. Astrue, 2011 U.S. Dist. LEXIS 68129, at *13 (N.D. Ill. June 24, 2011). Rather, the ALJ must explain that decision "by discussing the length, nature, and extent of the treating relationship; the supporting evidence in the record; the consistency of the opinion with the record, and the physician's medical speciality." Id.; see also Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009). In other words, the ALJ must provide "good reasons" for his or her decision. 20 C.F.R. § 404.1527(d)(2)).

As noted above, Plaintiff challenges the ALJ's determination that Dr. Carrell's opinion of Plaintiff's ability was "excessive in light of clinical and laboratory findings after recovery from acute injuries and the claimant's conservative treatment."[1] She contends that the ALJ's determination was "conclusory" and that the ALJ should have cited to specific record evidence which he believed to be inconsistent with Dr. Carrell's opinion. As the Commissioner points out, however, to the extent that the ALJ "discounted" Dr. Carrell's December 2006 opinion, it was based upon the facts that it pre-dated other evidence indicating improvement in Plaintiff's condition and that it was

---

[1]Plaintiff does not specifically challenge the ALJ's rejection of Dr. Carrell's opinion that Plaintiff was medically unable to work. However, we note that any such argument would be without merit given that 20 CFR 404.1527(e) expressly states that opinions on such issues are reserved to the Commissioner.

issued at a time during which Plaintiff was recovering from acute injuries related to accidents that had occurred in 2006. Indeed, the ALJ explained that several of Dr. Carrell's opinions following the December 2006 opinion showed improvements in Plaintiff's condition after that time and were, thus, "inconsistent" with Dr. Carrell's previous assessment. For example, the ALJ noted that Dr. Carrell's notes from July 2007 indicated that Plaintiff was "taking daily walks outdoors, 75-100 yards, improving her mobility and flexibility." R. at 16. In October 2007, Dr. Carrell "noted that the claimant had good strength and continued to walk for exercise." Id. Furthermore, the state agency physicians provided a more optimistic of Plaintiff's condition in the Fall of 2006. While a contradictory opinion of a non-treating physician is not in and of itself sufficient reason to reject the opinion of a treating physician, Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003), such opinions combined with other consistent medical evidence in the record may undermine the assessment of a treating physician. Henriksen v. Astrue, 2008 U.S. Dist. 84698, at 24 (N.D. Ill. Sept. 9, 2008)(citing Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006). Because the ALJ provided an adequate explanation of her reasons for determining that Dr. Carrell's December 2006 opinion was "excessive," we conclude that remand on this basis would be inappropriate.

### C. Consideration of New and Material Evidence

Finally, Plaintiff asks that the Court remand her case pursuant to 42 U.S.C. § 405(g), which states (in relevant part) that the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a

showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). While Plaintiff suggests that a remand pursuant to 42 U.S.C.§ 405(g) is appropriate, she provides no support for her claim that the Haskins Report is the type of new or material evidence for which such action is warranted. The Seventh Circuit directs that such "perfunctory and undeveloped arguments" are deemed waived. Elliott v. Astrue, 2010 WL 3893801, at *6 (S.D. Ind. Sept. 29, 2010) (citing United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir. 1991)). Thus, we conclude that remand on this final basis would be inappropriate as well.

## V. Conclusion

For the reasons detailed herein, the decision of the Commissioner is AFFIRMED, and final judgment shall enter accordingly.

IT IS SO ORDERED.

Date:_____07/27/2011_____

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Thomas E. Hamer
tom@tomhamerlaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov